**Glen D. PALMER and the State of Illinois, Plaintiffs-Appellees,**

v.

**UNITED STATES CIVIL SERVICE COMMISSION, Defendant-Appellant.**

**No. 13382.**

United States Court of Appeals
Seventh Circuit.

Jan. 8, 1962.

Morton Hollander, Chief, Appellate Section, Anthony L. Mondello, Attorney, U. S. Department of Justice, Washington, D. C., Harlington Wood, Jr., U. S. Atty., Springfield, Ill., William H. Orrick,

Jr., Asst. Atty. Gen., Edward R. Phelps, U. S. Atty., Springfield, Ill., for appellant.

William C. Wines, Asst. Atty. Gen., William G. Clark, Atty. Gen., Raymond S. Sarnow, A. Zola Groves, Aubrey Kaplan, Asst. Attys. Gen., of counsel, for appellees.

Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

This action was brought to set aside the determination of the United States Civil Service Commission (Commission) that certain political activities of the plaintiff, Glen D. Palmer, while he was Director of the Department of Conservation of the State of Illinois, violated sec. 12 of the Hatch Political Activities Act (Hatch Act).[1] The District Court directed the Commission to set aside its determination and dismiss the letter of charges which had initiated the administrative proceeding.

On June 9, 1958, the Commission issued a letter of charges against the plaintiffs. The charge made was that plaintiff Palmer, from the time of his employment by the State of Illinois, Department of Conservation, on June 28, 1953, had taken an active part in political management and political campaigns. It is not denied in this record that Palmer served actively as Precinct Committeeman and as Chairman of the Kendall County Republican Committee throughout the period of his employment.

The District Court filed a forty-three page opinion (Palmer v. United States Civil Service Commission, 191 F.Supp. 495). The opinion contained a detailed discussion of the applicability of the decision of the Supreme Court of the United States in State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794. The District Court concluded the Hatch Act remedies violated plaintiff Palmer's "legal vested rights." The Court also held the maxim *de minimis non curat lex* was applicable to the facts in this case.

Pertinent quotations from the Hatch Act are: "No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency * * *. No such officer or employee shall take any active part in political management or in political campaigns * * *. [T]he term 'officer or employee' shall not be construed to include * * * (3) officers holding elective offices."

It is undisputed that $2,263,661.20 of federal funds under three different federal aid programs were paid to the State of Illinois during Palmer's tenure as Director of the Department of Conservation from 1953 to 1958.

The Pittman-Robertson Act also known as The Federal Aid to Wild Life Act, 16 U.S.C.A. §§ 669–669i, authorizes the Secretary of Interior to cooperate with the states through their respective State Fish and Game Departments in wild life-restoration projects. The federal contribution to the States under this Act is set apart in the United States Treasury as "The Federal aid to wild life-restoration fund," the monies for which were accumulated from federal taxes imposed on firearms, shells and cartridges.

The Dingell-Johnson Act, 16 U.S.C.A. §§ 777–777k contains provisions for the restoration and management of all species of fish which have a material value in connection with sport or recreation in marine or fresh waters of the United States. The federal contributions come from revenues obtained from federal taxes on fishing rods, creels, reels, artificial lures, baits and flies. 16 U.S.C.A. § 777b.

The Clarke-McNary Act, 16 U.S.C.A. §§ 471, 505, 515, 564–570 makes provision for cooperative undertakings between the Secretary of Agriculture and the States or their agencies with respect

---

1. Title 5 U.S.C.A. § 118k.

to systems of forest fire prevention and suppression and the procurement, production and distribution of forest-tree seeds and plants.

The Department of Conservation is the agency designated by the State of Illinois to deal cooperatively with the Federal Government in programs concerning fish, wild life and forestry conservation. Smith-Hurd Illinois Annotated Statutes, Chapter 127, Section 63a, 63b, 63b1.

It was proved and it is without dispute that the separate Fish and Game fund maintained within the General Treasury of the State of Illinois received the federal monies under the Pittman-Robertson and the Dingell-Johnson Acts. Also, that federal monies were paid under the Clarke-McNary Act dealing with the Forestry program, and federal payments also were made under the Federal Soil Bank program.

As Director of the Department of Conservation of the State of Illinois, it was Mr. Palmer's statutory duty to supervise the nine Divisions of his Department and some ten or twelve boards, commissions and councils. He alone had complete responsibility for policy direction and administration of the Department.

Mr. Palmer estimated that fifty percent of his time was spent on the Division of Parks-Memorials, but he could make no specific allocation of the balance of his time among the other Divisions. He did say he spent less than one percent of his time on federal aid projects, and explained this was possible by reason of the activities of two full-time coordinators who supervised the administration of twenty to twenty-five federal aid projects then in the Illinois Department of Conservation. These coordinators are state employees appointed by the Director of the Illinois Department of Conservation subject, by state consent, to qualification approval by federal agencies.

The hearing examiner found the funds paid by the Federal Government under the conservation programs hereinbefore described, were "grants" under sec. 12 of the Hatch Act. He also found that Mr. Palmer, in his office as Director of the Department of Conservation, was a state officer covered by sec. 12 of the Act. However, he recommended that the matter be viewed as *de minimis*.

The Commission agreed with the examiner that Palmer had, in fact, been engaged in activities which were political; that the State had received substantial grants from the Federal Government, and that Palmer's office as Director was not one of the offices exempted by sec. 12 (a) of the Act. The Commission rejected the examiner's suggestion that the matter was *de minimis*.

Upon application by plaintiffs, the Commission reconsidered the question of *de minimis*, but again rejected same. In its order of October 1, 1959, the Commission pointed to Mr. Palmer's position of responsibility for all of the activities of the Department of Conservation, including those financed in whole or in part by federal funds, and noted that these responsibilities were not lessened by the delegation of duties respecting particular projects to particular subordinates. The Commission pointed out that during Mr. Palmer's tenure in office, approximately eight percent of the total expenditures of his Department came from federal grants.

The District Court's lengthy discussion of State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794, strongly indicates the belief that the case was wrongly decided. Several critical references are made to that Supreme Court opinion. At 191 F.Supp. 495, at 520, appears the following quotation from the Supreme Court decision in the Oklahoma case: " ' * * * [I]t [United States] does have power to fix the terms upon which its money allotments to states shall be disbursed.' " The District Court comments: "There is no citation of Constitutional authority to this proposition."

Whether or not the Supreme Court sufficiently documented its holdings in the Oklahoma case by citations, footnotes or otherwise, there can be no doubt that

the Court did specifically and definitely decide the Hatch Act was constitutional.[2]

The Supreme Court said, 330 U.S. at 143, 67 S.Ct. at 553: "The Tenth Amendment does not forbid the exercise of this power in the way that Congress has proceeded in this case. * * * The end sought by Congress through the Hatch Act is better public service by requiring those who administer funds for national needs to abstain from active political partisanship. So even though the action taken by Congress does have effect upon certain activities within the state, it has never been thought that such effect made the federal act invalid. * * * "

The District Court states, 191 F.Supp. at 532: " * * * The Supreme Court * * * has said that the Act in question [Hatch Act] is constitutional, and this Court is bound thereby * * *." Nevertheless, in the next paragraph the District Court states: "However, the Oklahoma case leaves open the question of the constitutional rights of the state officer."

To try to understand the distinction made by the District Judge, we quote further from his opinion: " * * * Thus it can readily be seen that the Hatch Act, when it points to the executive departments under the Governor, strikes at the supreme executive authority of Illinois, and this it cannot do any more than it could strike at the supreme executive authority of the United States, the Presidency * * *." (191 F.Supp. at 530.) Also, "None of the salary of Mr. Palmer, as a State officer, comes from Federal funds." (Page 535.) The District Court seems to sum up its position in the following quotation: "It follows that the respondent, Glen D. Palmer, is protected in these rights for all purposes as disclosed in this record under the Constitutions of the United States and of the State of Illinois, and to place him under recall or to withhold him from office under penalty to the State of having the Commission order the withholding of funds mutually and co-operatively provided for under the respective acts, both Federal and State, above mentioned simply because he holds a political party position, or is a member of a political committee, as permitted by Illinois law, is not within the law and would violate his legal vested rights, all of which are guaranteed by both the Federal and State Constitutions as herein above mentioned." (191 F.Supp. at page 535.)

We must give more than lip service to the clear and definite holding of the Supreme Court that the Hatch Act is constitutional. In the Oklahoma case, the State of Oklahoma had urged as grounds for holding the Hatch Act unconstitutional, 1) that it was an invasion of the sovereignty of the State in violation of the United States Constitution, and further, that the Act was invalid as an unlawful delegation of power; 2) if valid, the Act applies only to "active" participation in political management or political campaigns, and that "active" participation had not been shown; and 3) if valid, the Act did not warrant the United States Civil Service Commission in ordering the removal of the state official or alternatively, the application of a penalty to the State of Oklahoma. Similar contentions are made in the case at bar, yet these and other suggestions of invalidity were expressly rejected by the Supreme Court.

In the Oklahoma case, the state official, Paris, while a member of the State Highway Commission, was, for nine months, Chairman of the Oklahoma Democratic State Central Committee. His participation in politics during the nine-month period was comparatively modest because Oklahoma had no general election that year, and the State Democratic Headquarters were closed at least for a part of that period. Funds had been received by Oklahoma from the Federal Government to be used for highway purposes. The Civil Service Commission deter-

2. In the companion case of United Public Workers of America et al. v. Mitchell et al., 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754, the Supreme Court upheld the constitutionality of the Hatch Act as to a federal employee.

454

mined these facts constituted taking an active part in political management or in political campaigns, and warranted the removal of Paris as Highway Commissioner.

Specifically, the Supreme Court held that " * * * [T]he United States * * * does have power to fix the terms upon which its money allotments to states shall be disbursed." and "The Tenth Amendment does not forbid the exercise of this power in the way that Congress has proceeded in this case. * * *" (330 U.S. at 143, 67 S.Ct. at 553.)

■ The factual differences between the case at bar and the Oklahoma case are of no importance. The Supreme Court squarely answered in favor of validity of the Hatch Act, every major assertion of unconstitutionality raised by the plaintiffs in this case. The claim that Palmer was deprived of vested rights without due process was settled in principle in the companion case of United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754.

We hold that the case at bar is controlled by State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794. It validated the removal-or-forfeiture remedy when applied to a high state official against the challenge of unconstitutionality based on the Tenth Amendment. Also, in light of United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754, the private interests of Palmer in his employment are not constitutionally affected by the Hatch Act remedy.

■ One additional argument is made on the question of the alleged unconstitutionality of the Hatch Act. Plaintiffs argue that to apply sec. 12 of the Hatch Act to the facts of the instant case would be to deny to the citizens of Illinois a republican form of government in violation of Article IV, Section 4 of the Constitution of the United States. Plaintiffs insist this is true if a single state officer can determine for himself, by not resigning, whether his state shall or shall not receive federal funds for a two-year period.

No case is cited by plaintiffs concerning a republican form of government. In fact, plaintiffs admit there are no authorities directly in point. Plaintiffs do not point out the manner in which they claim a republican form of government is disturbed by the enforcement of the Hatch Act except for the general statement hereinbefore quoted. Ignored are statements of the United States Supreme Court such as in Harisiades v. Shaughnessy, 342 U.S. 580, at page 589, 72 S.Ct. 512, at page 519, 96 L.Ed. 586, where, in commenting on policy concerning the maintenance of a republican form of government, the Court said: "Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." We think the argument that the Hatch Act is invalid because it denies the citizens of Illinois a republican form of government is entirely without merit.

■ We also hold that the de minimis rule is inapplicable under the circumstances of this case. Palmer was the highest state official responsible for the conservation affairs of the State of Illinois. He had administrative supervision of all nine Divisions of the Department of Conservation. At least six of such Divisions conducted activities to which federal contributions had been made. Palmer was responsible for major policy decisions which had to be made at state level. He initially approved the project plan and report for each federal aid project. By state law, he was given specific responsibility for the state development of Federal-Grant-in-Aid-projects. His duties in connection with federally financed activities took up at least fifty percent of his time. Palmer plainly met the test that his "principal employment" was "in connection with any activity which is financed in whole or in part by loans or grants made by the United States or any Federal agency."

• It is of interest to note that the decision of the District Court in the instant

case was strongly relied on by the plaintiffs in the case of Engelhardt and State of Alabama v. United States Civil Service Commission, M.D.Ala., 197 F.Supp. 806. The District Court rejected the contentions of the plaintiffs in that case, which were practically identical with the contentions raised in the case at bar. The Court stated, at page 812: "Any contrary reasoning or conclusion in the Palmer case is specifically rejected by this Court. * * *"

The judgment of the District Court herein must be and is reversed with instructions to affirm the determination of the Commission.

Reversed and remanded.