**Frank BROOKS et al.**

v.

**John H. NACRELLI et al.**

**Civ. A. No. 68–2332.**

United States District Court,
E. D. Pennsylvania.

Sept. 8, 1971.

---

Jack Brian, Upper Darby, Pa., Stuart S. Bowie, Philadelphia, Pa., for plaintiffs.

Guy G. deFuria, deFuria & Larkin, Chester, Pa., for defendants Joseph L. Eyre, Chairman, Chester City Republican Executive Committee, and Chester City Republican Executive Committee, an unincorporated ass'n.

Philip A. McMunigal, Jr., Joseph F. Battle, Jr., Chester, Pa., for remaining defendants.

## OPINION AND ORDER

HAROLD K. WOOD, District Judge.

■ Plaintiffs, residents and registered voters of the City of Chester, Pennsylvania, instituted the instant class action to enjoin and to obtain declaratory relief against partisan political activity by members of the Chester Police Department.[1] Plaintiffs allege that approximately twelve to fourteen members of the Police Department serve in the capacity of Republican Party committeeman, a non-paying, elective office, and in that capacity electioneer at the polls for Republican Party candidates. An additional eight to ten members of the Police Department serve as political workers who assist the committeemen. The policemen who serve as committeemen and political workers are usually present at the polls on Election Day. They are not given Election Day off by the Department, but rather if they take the day off, it is credited against vacation time or compensatory time which the policemen have earned by working overtime hours. The policemen while working as committeemen are non-uniformed.

Plaintiffs' allege that these activities result in intimidation of the Chester voters and that the police engage in these activities with the acquiescence of the Mayor of Chester and the Chairman of the Chester Republican Executive Committee who are joined as defendants.[2]

Count I of plaintiffs' complaint alleges that the challenged police activities violate those sections of the Civil Rights Act prohibiting voter intimidation,[3] the First Amendment right of free political expression and the privileges and immunities and equal protection clauses of the Fourteenth Amendment. Count II alleges that the activities constitute a violation of the Hatch Act, 5 U.S.C. § 1501 et seq.

On October 28, 1968, after a hearing on plaintiffs' motion for a preliminary injunction, we denied the claim for injunctive relief. The parties have now advised us that they do not intend to present further evidence and have requested that final adjudication of the case be determined on the record adduced at the prior hearing.

For reasons hereinafter stated, we conclude that plaintiffs' request for permanent injunctive relief must be denied.

■ The initial issue presented by plaintiffs' suit is the applicability of 42 U.S.C. § 1971(b) upon which they rely, in part, for relief.[4] Plaintiffs contend

---

1. We have determined that this is a proper class action under Federal Rule 23. While we did not make a determination of the propriety of the class action at the hearing for a preliminary injunction, no party has been prejudiced by the absence of such determination.

2. Defendant Joseph M. E. Bail apparently is sued in his official capacity as Chief of Police and as one of the policemen who serves as a committeeman.

3. 42 U.S.C. §§ 1971(b), 1983, 1985(3).

4. § 1971(b) provides:

"No person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering

that, although 42 U.S.C. § 1971(c) authorizes the Attorney General to institute an action for the United States to enjoin violations of § 1971(b), nevertheless a private action for violations of § 1971(b) also lies.[5] While we agree with this contention, we nevertheless conclude that § 1971(b) is not applicable to this case.

■ 42 U.S.C. § 1971(a) (1), in language adapted from the Fifteenth Amendment, provides that "All citizens of the United States who are otherwise qualified by law to vote at any election * * * shall be entitled and allowed to vote at all such elections, *without distinction of race, color, or previous condition of servitude* (emphasis added). Because the purpose of § 1971 is to prevent racial discrimination at the polls, the Courts have held that the Section is applicable only where voter intimidation is racially motivated. Cameron v. Johnson, 262 F.Supp. 873 (S.D.Miss.1966), reh. den. 391 U.S. 971, 88 S.Ct. 2029, 20 L. Ed.2d 887 (1968; Powell v. Power, 320 F.Supp. 618 (S.D.N.Y.1970), aff'd. 436 F.2d 84 (2nd Cir. 1970); Gremillion v. Rinaudo, 325 F.Supp. 375 (E.D.La. 1971). In the instant case there is no allegation of racial discrimination, nor does any evidence of such discrimination appear in the record. Consequently we find that 42 U.S.C. § 1971(b) does not afford plaintiffs a basis for relief. However, plaintiffs also allege that the partisan political activity by the Chester policemen constitutes a violation of the privileges and immunities and equal protection clauses of the Fourteenth Amendment and the First Amendment right of free political expression. It is clear that "the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." Reynolds v. Sims, 377 U.S. 533, 554, 84 S.Ct. 1362, 12 L. Ed.2d 506 (1964). Therefore, we conclude that plaintiffs' allegation that defendant policemen, acting under color of authority, have interfered with that right states a claim upon which relief can be granted and that consequently the inapplicability of § 1971(b) does not preclude us from reaching the merits of plaintiffs' case.

■ Plaintiffs do not allege that the policemen serving as committeemen and political workers engage in any overt activities which interfere with their right to vote. Rather they contend that the presence of the police on election day has an inherently coercive effect on that right. In support of this contention they cite the observation of the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 457, 86 S.Ct. 1602, 1619, 16 L.Ed.2d 694 (1966), that the police can create an "atmosphere [which] carries its own badge of intimidation. To be sure, this is not physical intimidation, but it is equally destructive of human dignity." However, in making this observation, the Court was referring not to inherent intimidation created by the mere presence of police but rather to such intimidation in an interrogation environment where an accused is, in the presence of

with the right of such other person to vote or to vote as he may choose, or of causing such other person to vote for, or not to vote for, any candidate for the office of President, Vice President, presidential elector, Member of the Senate, or Member of the House of Representatives, Delegates or Commissioners from the Territories or possessions, at any general, special, or primary election held solely or in part for the purpose of selecting or electing any such candidate."

5. In Gray v. Main, 291 F.Supp. 998 (M.D. Ala.N.D.1968), the Court found that a private litigant had standing to assert the substantive portions of 42 U.S.C. § 1973i in a Civil Rights action under 42 U.S.C. § 1983. § 1973i contains a prohibition similar to that imposed by § 1971(b) and, like § 1971, § 1973 does not provide for a private suit, but rather a suit instituted by the Attorney General for the United States. The Court concluded that "[Nothing] in the Voting Rights Act (i. e. § 1973) precludes the exercise of or dilutes the rights conferred by § 1983." The same reasoning would seem to apply to a § 1983 action alleging violations of § 1971(b).

no one but policemen, being questioned about his alleged participation in a criminal offense. It by no means follows that this same atmosphere is created where persons in the lawful exercise of their right to vote are urged by one or two non-uniformed policemen to support a certain party or candidate.

A similar question to that presented here arose in Gremillion v. Rinaudo, *supra,* in which plaintiffs sought to set aside the results of a Democratic Party primary election for school board members. One allegation of plaintiffs' complaint was that the local Chief of Police "assisted" voters at the polls, the result of which was inherent coercion and intimidation of the right to vote.

While the facts of *Gremillion* are somewhat dissimilar from those of this case, we feel that the situation there was more susceptible to a finding of inherent coercion and intimidation than the situation here. In the first instance, the Police Chief in *Gremillion* was uniformed, whereas the Chester policemen who serve as committeemen and political workers are not. Secondly there is no indication in the Court's opinion that the Police Chief was a committeeman or authorized political worker. Therefore the voters could reasonably have inferred, and perhaps correctly so, that he was acting not in an official election capacity, but in his capacity as Chief of Police. Nevertheless the Court declined to find that his assistance of voters, without more, constituted, on its face, illegal intimidation and coercion.

Plaintiffs have failed to show that the challenged activities have, in fact, had an intimidating effect upon the voters of the City of Chester. There was, for example, no testimony from any registered voter that he is hesitant to vote or to vote in a certain way because of the presence of the policemen on Election Day, nor was there testimony from any of the Committeemen and Committee-

women who testified that they are presented with any difficulty in getting prospective voters to register with the Democratic Party or getting registered voters to vote Democratic because of the partisan political activity by the policemen. There is no evidence that the percentage of registered Democratic voters who vote regularly is less in those precincts where the Republican Party committeemen are policemen. Nor is there any evidence that Democratic registration is less in those precincts where the Republican Party Committeemen are policemen than in comparable precincts where they are not. Such evidence would tend to corroborate plaintiffs' contention that the partisan political activities have a coercive effect on Chester voters. In the absence of such evidence and in the absence of evidence of active intimidation or coercion, we are left with the mere assertion that the activities engaged in by party committeemen become, when the committeemen are policemen, coercive and intimidating. We do not consider this an adequate basis for relief.[6]

We also see no merit to plaintiffs' claim that the activities of the police as committeemen deny them equal protection of the law in that the policemen serving as committeemen may, in their capacity as policemen be disinclined to enforce the law in a "non-partisan" manner. Such a contention rises to no more than sheer speculation and does not support a claim for relief.

■ Count II of plaintiffs' complaint alleges that the police activities at the polls violates the Hatch Act, 5 U.S.C. § 1501 et seq. The Act provides, in relevant part:

"(a) A State or local officer or employee may not—

(1) Use his official authority or influence for the purpose of interfering with or affecting the result

---

6. The record also fails to disclose any evidence of a conspiracy to intimidate or coerce plaintiffs from voting or giving their support or advocacy to any candidate. We do not believe that this issue requires further discussion.

of an election or a nomination for office;

\* \* \* \* \* \*

(3) Take an active part in political management or in political campaigns." 5 U.S.C. § 1502.

A "State or local officer or employee" is defined as "an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency."[7] 5 U.S.C. § 1501(4).

The record discloses that in 1968 the Chester Police Department received a grant of $252.00 from the Federal Government under the Law Enforcement Assistance Act of 1965. The money was used as part payment for some photographic equipment, the total cost of which was $512.00. Plaintiffs maintain that, as defendant policemen are employees of a local agency which received federal funds, they are prohibited from engaging in partisan political activity.

Plaintiffs argue that they have standing to bring an action for alleged violations of the Hatch Act. The Act provides (5 U.S.C. § 1504, 1505) that violations are to be reported to the Civil Service Commission. The Commission determines whether the Act has been violated and this determination is subject to judicial review. (5 U.S.C. § 1508) It is clear that the Civil Service Commission has the sole authority to enforce the provisions of the Hatch Act. Dingess v. Hampton, 305 F.Supp. 169 (D.C. D.C.1969). Thus, regardless of whether plaintiffs have standing as aggrieved parties, it is obvious that to permit them to bring an action based on alleged

Hatch Act violations would be to permit a bypass of the administrative procedure set forth by Congress. Accordingly we do not believe that plaintiffs can properly base their cause of action on alleged violations of the Hatch Act.

At any rate, the amount of federal aid received by the Chester Police Department is so small as to evoke the rule of *de minimis*. The $252.00 received by the Department constituted less than one-fortieth of one percent of the Police Department budget. In Palmer v. U. S. Civil Service Commission, 7 Cir., 297 F. 2d 450 (1962), cert. den. 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962),[8] the only case which squarely considered the applicability of the *de minimis* rule to the Hatch Act, the Court denied the claim of *de minimis* because of the amount of federal aid involved. Implicit in the opinion, however, is the conclusion that the rule can apply in appropriate circumstances. In that case over $2.2 million dollars in federal aid was received by the employee's agency over a six-year period. Moreover, the employee spent half his time in connection with federally financed activities. In the instant case the amount of federal aid is nominal and there is no indication that defendants spent any time in connection with the federally funded activity (i. e. connection with the photographing equipment). Accordingly this is an appropriate case for application of the *de minimis* rule.

Accordingly, plaintiffs' request for declaratory and injunctive relief will be denied. The foregoing shall constitute our findings as required by Federal Rule 52(a).

7. A "State or local agency" is defined as "the executive branch of a State, municipality, or other political subdivision of a State, or an agency or department thereof." 5 U.S.C. § 1501(2).

8. See also Engelhardt v. United States Civil Service Commission, 197 F.Supp. 806 (M.D.Ala.N.D.1961).