Frank BROOKS et al., Appellants,

v.

John H. NACRELLI, Mayor of the City of Chester, Pennsylvania, et al.

No. 71-2033.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1972.

Decided Feb. 12, 1973.

Jon J. Auritt, Schroeder, Jenkins & Raymond, Stuart S. Bowie, Media, Pa., for appellants.

Philip A. McMunigal, Jr., Fronefield, deFuria & Petrikin, Joseph F. Battle, Jr., Chester, Pa., for appellees.

Before ALDISERT, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The issue presented for resolution is whether the district court erred in denying appellants' request for injunctive and declaratory relief which sought to prohibit city policemen in Chester, Pennsylvania, from participation in partisan political activity. Appellants contend that because fifteen percent of the police force in their community are committeemen for a major political party, their presence at the polls on election day is contrary to the First and Four-

teenth Amendments, and results in intimidation of voting rights contrary to federal statutes.

Appellants, Chester residents and voters, filed this class action on October 22, 1968, seeking declaratory and injunctive relief against members of the police department, requiring them to disengage from partisan political activity on behalf of the Republican Party. They introduced evidence that twelve to fourteen members of the police force have been elected to the non-paying position of Republican Party committeeman, and, in that capacity, work at the polls for Republican Party candidates. Eight to ten other members of the force serve these committeemen as political workers. These officers are usually present at the polls on election day. They take this day off from work, and go uncompensated for this time unless they credit it against vacation time, or compensatory time which they have earned by working overtime. While working as committeemen, these policemen are non-uniformed.

Following testimony and argument, the district court dismissed the complaint. This court vacated the district court's order, noting that merely because the district court denied appellants' request for a preliminary injunction, the court erred in dismissing the entire complaint. We remanded the cause with directions to proceed with a final hearing and decision. 415 F.2d 272 (3d Cir. 1969). On remand, the parties stipulated that further evidence was unnecessary, and requested that final adjudication be made on the record adduced at the prior hearing. The court found that appellants failed to establish that the activities of the officers as Republican Party committeemen interfered with anyone's right to vote, and denied appellants' motions for a permanent injunction and declaratory relief, 331 F.Supp. 1350 (E.D.Pa.1971), and it is from that denial that this appeal emanates.

Appellants present three contentions:

1) that partisan political activity by a "significant number of the mu-

nicipality's policemen" on behalf of the Republican Party violates the equal protection clause of the Fourteenth Amendment;

2) that this activity violates those sections of the Civil Rights Acts prohibiting intimidation of voters (42 U. S.C. §§ 1971(b), 1983, 1985(3)); and

3) that this activity violates First Amendment rights of free political expression.

■ Appellants offer what seems to be a two-pronged argument that the presence of policemen at the polls on election day in the capacity of Republican committeemen violates the equal protection clause. First, they allege that merely because a citizen of the city of Chester happens to be known by a policeman-committeeman to be of a different political affiliation, he will be dealt with more severely, and otherwise discriminated against, in his encounters with the police. Appellants argue:

A major part of police work is not tracking down felons, but sorting out and ameliorating day-to-day problems in which the policeman has great discretion. When a policeman-politician is confronted with boisterous, arguing neighbors, a driver who made an illegal U-turn, a domestic squabble, and other fairly common situations, will he take into consideration whether the person(s) he is dealing with are "loyal" Republicans or adversary Democrats? And especially on an election day can it be presumed that improper, political activity will be checked by these policemen-politicians? The likelihood of unequal protection of the law is not only likely but certain. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1896).

Yet, although appellants term the occurrence of such situations a certainty, a scrutiny of the record yields not one iota of evidence, neither the most meager testimony nor the slightest intimation, that anyone in the city was treated in a discriminatory fashion because he was a member of the Democratic Party or any other party. Therefore, this aspect of appellants' equal protection argument must be said to lack minimal evidentiary or testimonial support.

■ In the second facet of this equal protection argument, appellants make much of the testimony of the Mayor of Chester that a "policeman works for the city seven days a week, twenty-four hours a day," and that this is true even though he may be at the polls as a political worker. From this, appellants infer that those hours spent by policemen as committeemen and political workers for the Republican Party, constitute time spent for a partisan political purpose while serving the city as an on-duty police officer.

Clearly, the Mayor did not represent, and could not represent, that all police officers in the city of Chester are required to be in designated places doing policework every minute of every day. Rather, he was merely articulating the aphorism that "a policeman's work is never done," a tribute to the fact that a law officer must be forever prepared, vigilant, and, in many cases, on call. To attribute a literal interpretation to the Mayor's testimony would lead to the absurd conclusion that whatever "off-duty" activity a policeman undertakes is performed under the auspices of the city of Chester. Thus, in a context analogous to that presented in this case, the act of casting a ballot for a political candidate would become an act of the officer as an agent of the city.

Furthermore, we note that the officers in question take time off from work on election day, and go uncompensated for this time "unless they have compensatory time coming." In this latter instance, any compensation they receive derives from accrued vacation time or overtime work, and not for serving as policemen during these voting hours. Thus, the allegation that these men are

simultaneously working for the city and the Republican Party is inaccurate.[1]

■■■ Appellants also contend that the presence of police at the polls in the capacity of Republican Party committeemen creates an atmosphere of intimidation towards all those holding contrary political views, which, in turn, stifles free political expression, "specifically with regards to political activity and voting in favor of the Democratic Party." Appellants state:

> Exercising legal political rights under the watchful eyes of adversary party workers is normal, but, when these adversary party workers are policemen, then a chill envelops the entire electoral process. No citizen should be required to oppose or confront policemen as the price of articulating political dissent.

Again, however, the record is simply devoid of evidence that the police intimidated anyone, or in any way stifled First Amendment rights. Rather, the only testimony was that the officers, like non-police committeemen, brought prospective voters to the polls, instructed them in the use of the ballot, and distributed political campaign materials. Moreover, appellants' allegations that the circumstances presented here amounted to "the conduct of an election under police supervision," with "the polling places dominated and controlled by a partisan police," can be characterized only as genuine fantasy. As the district court found:

> Plaintiffs have failed to show that the challenged activities have, in fact, had an intimidating effect upon the voters of the City of Chester. There was, for example, no testimony from any registered voter that he is hesitant to vote or to vote in a certain way because of the presence of the policemen on Election Day, nor was there testimony from any of the Committeemen and Committeewomen who testified that they are presented with any difficulty in getting prospective voters to register with the Democratic Party or getting registered voters to vote Democratic because of the partisan political activity by the policemen. There is no evidence that the percentage of registered Democratic voters who vote regularly is less in those precincts where the Republican Party committeemen are policemen. Nor is there any evidence that Democratic registration is less in those precincts where the Republican Party committeemen are policemen than in comparable precincts where they are not. Such evidence would tend to corroborate plaintiffs' contention that the partisan political activities have a coercive effect on Chester voters. In the absence of such evidence and in the absence of evidence of active intimidation or coercion, we are left with the mere assertion that the activities engaged in by party committeemen become, when the committeemen are policemen, coercive and intimidating. We do not consider this an adequate basis for relief.

331 F.Supp. at 1353.

Moreover, this court refuses to announce a *per se* rule that the First Amendment right to free political expression is violated when an off-duty police officer tends his elected post at the polls as a committeeman. Indeed, such a rule might be found to deny those same First Amendment rights of free political expression to individuals employed as policemen since they could not run for elective office and work for their party on election day. Additionally, we observe that there is no statutory or case law prohibiting police officers in third-class cities of Pennsylvania, such as Chester, from being committeemen or workers for a political party. *Cf.*, statu-

---

1. This case is most unlike White v. Snear, 313 F.Supp. 1100 (E.D.Pa.1970), where the court found a violation of the equal protection clause by county commissioners who recorded county employees as present at their jobs on primary election day, when in fact they were electioneering and performing services for endorsed candidates.

tory prohibitions in the first-class city code, 53 Pa.Stat. § 12643.

Finally, we note appellants' reliance upon 25 Pa.Stat. § 3047:

No police officer in commission, whether in uniform or in citizen's clothes, shall be within one hundred feet of a polling place during the conduct of any primary or election, unless in the exercise of his privilege of voting, or for the purpose of serving warrants, or unless called upon to preserve the peace. . . . "

It is sufficient for this court to observe that appellants' complaint did not allege a violation of this statute, nor was there introduced at the hearing any testimony indicating a violation of this statute. Moreover, such an allegation would not produce a federal question for this court, but rather, would pose an issue peculiarly capable of resolution by the state.

The judgment of the district court will be affirmed.