IN RE THIRTEEN BALLOTS CAST IN THE 1985 GENERAL
ELECTION IN BURLINGTON COUNTY.

Superior Court of New Jersey
Law Division Burlington County

November 11, 1985.

The Burlington County Board of Elections, petitioner *pro se.*

HAINES, A.J.S.C. and Van SCIVER, J.S.C.

We are the judges assigned to resolve problems and conduct hearings relating to the 1985 general election in Burlington County. State and local candidates, but no national candidates are running in this election. The county's board of elections has requested our opinion as to the validity of 13 absentee ballots. All of them were delivered to the board with certificates attached indicating that the voters had been assisted in preparing their ballots because of "illness or physical disability." In every case the person providing such assistance was a candidate in the election.

*N.J.S.A.* 19:57–23 provides in pertinent part:

> No absentee voter shall permit any person in any way, except as provided hereafter, to unseal, mark or inspect his ballot, interfere with the secrecy of his absentee ballot vote, complete or sign the certificate, or seal the inner or outer envelope, nor shall any person do so.
>
> An absentee voter shall be entitled to assistance from a family member in performing any of the actions above. An incapacitated absentee voter shall also be entitled to assistance from a person other than a family member in performing any of such actions. The family member or other person providing such assistance shall certify that he did assist the voter and will maintain the secrecy of the vote by both printing and signing his name in the space provided on the certificate. *In no event may a candidate for election provide such assistance, nor may any person, at the time of providing such assistance, campaign or electioneer on behalf of any candidate.* [Emphasis supplied]

This statute obviously prohibits the assistance which the candidates provided. However, 42 *U.S.C.A.* § 1973aa–6, a part of the federal Voting Rights Act, provides:

> Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

Which statute controls? We conclude that the New Jersey statute is not affected by the quoted provision of the Voting Rights Act when national candidates are not running for election, that candidates in the 1985 general election were not permitted to assist absentee voters and that the 13 ballots in question must be rejected.

The clear purpose of the New Jersey statute's prohibition against absentee voter assistance by a candidate is the prevention of fraud. The prospect of improper influence of voter choices in such circumstances is obvious and underlined by problems previously reported. *In re Battle Petition*, 190 *N.J.Super.* 232 (App.Div.1983), aff'd as mod. 96 *N.J.* 63 (1984); *In re Petition of Byron*, 165 *N.J.Super.* 468 (Law Div.1978), aff'd o.b. 170 *N.J.Super.* 410 (App.Div.1979), certif. den., 82 *N.J.* 280 (1979). *Battle*, recognizing the potential for evil in the mishandling of absentee ballots, voided ones which were not handled strictly in accordance with statutory requirements. *Byron* did the same.

The federal statute ignores the possibilities of fraud in its provisions permitting assistance to absentee voters. It is not our role to debate its wisdom. We are, however, obliged to recognize its limitations. The Voting Rights Act and amendments thereto provided Congress with authority to control national elections and, to a limited extent, state elections. Its control of the latter is confined to the enactment of legislation enforcing provisions of the United States Constitution, notably, in the present case, its Thirteenth, Fourteenth, Fifteenth, Nineteenth and Twenty-fourth Amendments. The majority of the United States Supreme Court so held in *Oregon v. Mitchell*, 400 *U.S.* 112, 91 *S.Ct.* 260, 27 *L.Ed.*2d 272 (1970), in which, among other things, it upheld the provisions of the act lowering the voting age to 18 in national elections, but struck down the extension of those provisions to state and local elections. It said:

... No function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county and municipal offices and the nature of their own machinery for filling local public offices.

. . . .

... It is a plain fact of history that the Framers never imagined that the national Congress would set the qualifications for voters in every election from President to local constable or village alderman. It is obvious that the whole Constitution reserves to the States the power to set voter qualifications in state and local elections, except to the limited extent that the people through constitutional amendments have specifically narrowed the powers of the States. Amendments Fourteen, Fifteen, Nineteen, and Twenty-four, each of which has assumed that the States had general supervisory power over state elections, are examples of express limitations on the power of the States to govern themselves. [at 125–126, 91 S.Ct. at 265–266]

*Gremillion v. Rinaudo,* 325 *F.Supp.* 375 (D.E.D.La.1971), relying on *Oregon,* spelled out the rule:

Thus, as a general proposition, Congress has no authority to interfere with most state regulations of the "local" electoral process. But, because of the specific authority of the Thirteenth, Fourteenth, and Fifteenth Amendments, it is clear the Congress has the authority to attempt to remedy racial discrimination, within certain limits.

. . . .

Therefore, it is the opinion of this Court that the voting rights statutes and the Fourteenth and Fifteenth Amendments to the United States Constitution are directed against discrimination. And, except for the prohibition of specific devices, such as the literacy test, these statutes do not purport to spell out the procedure to be employed in the conduct of "local" elections in the several states. This prerogative remains, essentially, reserved to the several states. [at 378]

New Jersey's prohibition against candidate assistance to absentee voters is not discriminatory. It is a reasonable regulation of our voting machinery, properly designed to prevent fraud. It is a matter reserved to the states in connection with a "local" election. The present election is "local" and therefore subject to the New Jersey statutory prohibition.