PHILLIPS PETROLEUM COMPANY,
Plaintiff,

v.

FEDERAL ENERGY
ADMINISTRATION,
Defendant.

TENNECO OIL COMPANY, Plaintiff,

v.

FEDERAL ENERGY ADMINISTRATION
et al., Defendants.

PENNZOIL COMPANY, Plaintiff,

v.

FEDERAL ENERGY ADMINISTRATION
et al., Defendants.

COASTAL STATES GAS CORPORA-
TION, Plaintiff,

v.

FEDERAL ENERGY ADMINISTRATION
et al., Defendants.

CONTINENTAL OIL COMPANY,
Plaintiff,

v.

FEDERAL ENERGY ADMINISTRATION
et al., Defendants.

Civ. A. Nos. 77–90, 77–130, 77–131,
77–144 and 77–155.

United States District Court,
D. Delaware.

June 27, 1977.

S. Samuel Arsht and William O. LaMotte, III of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for all plaintiffs.

Paul J. Mode, Jr., Michael S. Helfer and Alan B. Sternstein of Wilmer, Cutler & Pickering, Washington, D. C., for Phillips Petroleum Co.

John P. Mathis of Baker & Botts, Washington, D. C., for Tenneco Oil Co. and Pennzoil Co.

David J. Beck, Laurance C. Mosher, Jr., and J. Todd Shields of Fulbright & Jaworski, Houston, Tex., for Coastal States Gas Corp.

Rush Moody, Jr., Michael J. Henke and P. Shaun Burns of Vinson & Elkins, Washington, D. C., for Continental Oil Co.

James W. Garvin, Jr., U. S. Atty., and John H. McDonald, Asst. U. S. Atty., Wilmington, Del., Barbara Allen Babcock, Asst. Atty. Gen., Stanley D. Rose, C. Max Vassanelli and Robert E. Richardson, Attys., Dept. of Justice, Washington, D. C., for defendants.

LATCHUM, Chief Judge.

Five oil companies[1] have brought these actions to challenge the defendant Federal Energy Administration's ("FEA")[2] interpretation and anticipated application of a regulatory scheme governing the method by which the plaintiffs raised the prices of their petroleum products as a result of increased costs incurred during a thirteen month period between January 1, 1975 and February 1, 1976. The FEA has moved to transfer these actions to the United States District Court for the Northern District of Ohio, where nine related actions are pending, or, alternatively, to stay these actions until decision is rendered in the Ohio cases;[3] additionally, the FEA, invoking the doctrines of ripeness, exhaustion of administrative remedies, and primary jurisdiction, has moved to dismiss these actions or to stay them pending completion of administrative consideration.[4] This opinion is addressed to the FEA's motion to transfer or to stay pending resolution of the Ohio cases which, if granted, would obviate the need to rule on the FEA's motion to dismiss.

1. *Background Facts*

In 1973, the FEA, acting pursuant to the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 751 et seq., and related legislation, established a complex system for controlling the prices of refined petroleum products. The EPAA allows a refiner to raise the prices of its products to recover increases, on a dollar-for-dollar basis, in its "product costs," principally the cost of crude oil, and its "non-product costs," which encompass most operating expenses. Increased product costs could be recovered either by raising the refiner's products' prices in the month following the month during which the increase occurred or by saving or "banking" the increased costs to justify a later price increase. The FEA, however, determined that non-prod-

---

1. Phillips Petroleum Corporation, Tenneco Oil Company, Pennzoil Company, Coastal States Gas Corporation, and Continental Oil Company, collectively, the "plaintiffs."

2. Four plaintiffs have also named the Administrator of the FEA as a defendant; reference throughout the opinion to the FEA includes the Administrator.

3. Docket Item 3. (Unless otherwise noted, references to the record are based upon Civil Action No. 77-90).

4. Docket Item 9.

uct cost increases should be recovered only in the month following the month in which the cost increases occurred. Thus, non-product cost increases could not be banked and those non-product cost increases which were not promptly recovered were simply foregone.

This litigation focuses upon the procedure purportedly set forth in FEA regulations for allocating price increases between product and non-product cost increases from January 1, 1975 to February 1, 1976. Refiners, in applying the FEA regulations, apparently have used three general modes for allocating the price increases. Proponents of the "first method" argue that all non-product costs are recovered before any product costs are recovered. This method is most beneficial to the refining industry because it does not reduce the amount of "bankable" cost increases until all "non-bankable" cost increases have been passed on. A second approach, followed by all plaintiffs in these cases and denominated the "proportional method," involves the pro-rata recovery of product and non-product costs. A third sequence, the "last method," treated product costs as having been recovered first; this procedure maximizes unrecovered non-product cost increases which are lost by the oil company if not promptly passed through.

In February, 1976, to the surprise of plaintiffs and many other refiners and in contradiction of the public pronouncements of many of its officials, the FEA announced that its regulatory scheme had required the application of the "last method" for recovering cost increases during the preceding thirteen months. The plaintiffs, in time, responded by filing these broad-based attacks against the FEA's regulatory scheme, charging, *inter alia,* that the FEA had misconstrued its own regulations, that its regulations were passed without prior notice, were arbitrary and capricious, were in contravention of the EPAA, and cannot be enforced because of plaintiffs' good faith reliance on representations of FEA personnel that the regulations required application of the proportional method.

Nine other oil companies have challenged the pass through regulations in the United States District Court for the Northern District of Ohio although only two of them employed the proportional method. The FEA, citing the burden of carrying on similar litigation in two forums, now seeks to have these actions transferred to the Northern District of Ohio for simultaneous disposition.

### 2. Transfer Motion

A motion to transfer is governed by 28 U.S.C. § 1404(a) which provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Although the Court must exercise its discretion in evaluating the convenience of the parties, the convenience of the witnesses, and the interests of justice, *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043, 1045 (C.A.3, 1973); *Kaiser Industries Corp. v. Wheeling-Pittsburgh Steel Corp.,* 328 F.Supp. 365, 368 (D.Del.1971), subsection 1404(a) confers upon the Court the power to transfer these actions

> "only if the plaintiff[s] had an 'unqualified right' to bring the action[s] in the transferee forum at the time of the commencement of the action[s] i. e., venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants."

*Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (C.A.3, 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *accord Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *Solomon v. Continental American Life Insurance Co., supra,* 472 F.2d at 1045; *American Electronic Laboratories, Inc. v. Dopp,* 334 F.Supp. 339, 344 (D.Del.1971); *Aetna Casualty and Surety*

*Co. v. Singer-General Precision, Inc.*, 323 F.Supp. 1141, 1145 (D.Del.1971).

■ The plaintiffs are incorporated in Delaware.[5] Venue of an action by a corporation against an officer or agency of the federal government[6] is regulated by 28 U.S.C. § 1391(e) which reads in part:

"A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action."[7]

Of the four enumerated conditions, only the fourth—where "the plaintiff resides if no real property is involved in the action"—is relevant to resolution of the question of "where [these actions] might have been brought." "[I]t has long been settled that 'the "residence" of a corporation, within the meaning of the venue statute, is only in the "State and district in which it has been incorporated." ' *Suttle v. Reich Bros. Construction Co.*, 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614 (1948)." *American Cyanamid Co. v. Hammond Lead Products, Inc.*, 495

F.2d 1183, 1184 (C.A.3, 1974).[8] Thus, Delaware is the only residence of these plaintiffs for purposes of subsection 1391(e). Since the plaintiffs do not reside in the Northern District of Ohio, venue would not have been proper in that forum if they had brought these actions there. Accordingly, the Court lacks the power under subsection 1404(a) to transfer these cases to the Northern District of Ohio.

The FEA, however, further argues that plaintiffs' option to intervene in the related actions pending in the Northern District of Ohio when plaintiffs initiated the proceedings in this court satisfies the "where it might have been brought" requirement of subsection 1404(a).

■ The premise of the FEA argument is that "intervening" in an action is the equivalent for venue purposes of "bringing" an action. The "bringing" of an action is commonly understood as the "initiating" or "starting" of an action. Courts have routinely treated the concept of "bringing" in the context of subsection 1404(a) as the functional equivalent of "start[ing]," *e. g., Shutte v. Armco Steel Corp., supra,* 431 F.2d at 24, or "br[inging] initially." *E. g., American Electronic Laboratories, Inc. v. Dopp, supra,* 334 F.Supp. at 344; *see Hoffman v. Blaski, supra.* In addition to being at odds with the plain meaning of subsection 1404(a), the FEA's interpretation denies substance to the "where it might have

---

**5.** Docket Item 1, par. 5, Civ. A. No. 77–90; Docket Item 1, par. 3, Civ. A. No. 77–130; Docket Item 1, par. 3, Civ. A. No. 77–131; Docket Item 1, par. 1, Civ. A. No. 77–144; Docket Item 1, par. 4, Civ. A. No. 77–155. The FEA has not questioned plaintiffs' allegations of state of incorporation and the FEA, as moving party, bears the burden in a transfer motion. *Shutte v. Armco Steel Corp.*, 431 F.2d at 25; *Smithkline Corp. v. Sterling Drug, Inc.*, 406 F.Supp. 52, 54 (D.Del.1975).

**6.** Plaintiffs do not question the jurisdiction of the Ohio court over the FEA.

**7.** No party has suggested that any statutory venue provision in addition to subsection 1391(e) is applicable to these cases.

**8.** *Accord Manchester Modes, Inc. v. Schuman,* 426 F.2d 629 (C.A.2, 1970); *Carter-Beveridge Drilling Co. v. Hughes,* 323 F.2d 417 (C.A.5, 1963) (per curiam); *Robert E. Lee & Co. v.*

*Veatch,* 301 F.2d 434 (C.A.4, 1961), *cert. denied,* 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962). 28 U.S.C. § 1391(c) provides:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

These cases make clear that subsection 1391(c) applies only to corporations as *defendants, see Atlantic Richfield Co. v. F. T. C.,* 398 F.Supp. 1, 14 n. 10 (S.D.Tex.1975); *American Electronic Laboratories, Inc. v. Dopp,* 334 F.Supp. at 343–44, and does not expand the plaintiff corporation's choice of venue in suits against the government to any district where it is "licensed to do business" or "doing business." *See, e. g., D C Electronics, Inc. v. Schlesinger,* 368 F.Supp. 1029 (N.D.Ill.1974).

been brought" language in cases where similar litigation is pending elsewhere.

Furthermore, the FEA has not stated whether plaintiffs' intervention would have been of right under Rule 24(a), F.R.Civ.P., or permissive under rule 24(b), F.R.Civ.P. Since the FEA has neither cited a statute conferring an absolute right to intervene nor pointed to any interest of plaintiffs at stake in the Ohio cases which could be impaired by their absence, it is likely that the FEA is contemplating permissive intervention under Rule 24(b) which provides in pertinent part:

> "Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Intervention under Rule 24(b), F.R.Civ.P., presupposes the existence of a similar action and requires a Court's discretionary permission. This dependence on other parties and a Court's discretion is inconsistent with *Hoffman v. Blaski, supra,* and its progeny which teach that a party must have a right to be in the transferee forum before transfer to that forum can be ordered. *E. g., Shutte v. Armco Steel Corp., supra,* 431 F.2d at 24 ("unqualified right").

Finally, the FEA relies extensively on *A. J. Industries, Inc. v. United States District Court,* 503 F.2d 384 (C.A.9, 1974), which held that "the ability to raise the subject matter of a suit in the transferor district by counterclaim in the transferee district will, as a general proposition, satisfy the 'where it might have been brought' requirement of 28 U.S.C. § 1404(a)." *Id.* at 387. *A. J. Industries,* however, does not lead necessarily to the result advocated by the FEA. First, *A. J. Industries* involved the unique condition of having both parties already

litigating against one another in the transferee district. There only certain claims, and not parties in any real sense, were transferred. Second, this Court must apply the law that venue must be proper in the transferee district. Third, the potential scope of *A. J. Industries* has been restricted largely to counterclaim cases by *Commercial Lighting Products, Inc. v. United States District Court,* 537 F.2d 1078, 1079 n. 1 (C.A.9, 1976), which reaffirmed that *Hoffman v. Blaski, supra,* "prohibits the district court [under 28 U.S.C. § 1404(a)] from transferring a case, over the plaintiff's objection, to another district in which the case could not have been brought initially." *Id.* at 1079.

In sum, the lack of proper venue precluded plaintiffs from bringing these cases in the Northern District of Ohio, and the FEA's motion to transfer must be denied.

### 3. *Motion To Stay*

■ Alternatively, the FEA has moved to stay these actions until the litigation involving similar issues in the Northern District of Ohio is resolved. A stay, the FEA argues, would conserve judicial resources and reduce the burden on the FEA of litigating related cases in two forums. The plaintiffs on the other hand, claim that a stay would unnecessarily delay disposition of their cases and perhaps, in effect, force them to participate in the Ohio proceedings so that critical legal issues would not be resolved without their views being heard. They also point out that while a few of the Ohio plaintiffs used the proportional method the majority of Ohio plaintiffs used the "first method." A possible consequence of representation of their position by a minority of the plaintiffs in Ohio is that their position might be relegated to some sort of second class status.

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153

(1936); *Dellinger v. Mitchell,* 143 U.S.App. D.C. 60, 442 F.2d 782, 786–87 (1971); *Camero v. McNamara,* 222 F.Supp. 742, 744 (E.D. Pa.1963). Although recognizing that the FEA is burdened by having to litigate related cases in different forums,[9] the Court, in the exercise of its discretion, *Rodgers v. United States Steel Corp.,* 508 F.2d 152, 162–63 (C.A.3, 1975), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975), concludes that these cases do not present one of those "rare circumstances" where a litigant in one forum should be forced to await a decision on the law in a similar case pending in another forum. A stay in these proceedings would mean that issues of overwhelming importance to these plaintiffs would be resolved in a forum where advocates of their interpretation of the FEA regulatory scheme, the proportional method, are in a distinct minority. Thus, some adverse consequences to the plaintiffs could reasonably be expected from a stay, but the cost to the FEA of denying the stay is minimal. Therefore, the Court will deny the application of the FEA to stay these cases pending the outcome of related litigation in the Northern District of Ohio.

An order will be entered in accordance with this opinion.

---

**9.** The Court, however, does not believe the burden to be as severe as the FEA implies. Discovery here and in Ohio has been coordinated. The pre-trial motions in both courts are likely to be similar, and, therefore, until the time of trial, if there is one, filing papers in this district and sending an attorney to argue motions represent the only additional costs to the FEA.