CONSUMERS UNION OF the UNITED STATES, INC. and Public Citizen's Health Research Group, Appellants,

v.

CONSUMER PRODUCT SAFETY COMMISSION et al.

No. 75–2059.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 21, 1976.

Decided July 5, 1977.

Rehearings Denied Aug. 25, 1977. See 565 F.2d 721.

**350**

Alan B. Morrison, Washington, D. C., with whom Peter H. Schuck, Nancy H. Chasen, Larry P. Ellsworth, and Mark H. Lynch, Washington, D. C., were on the brief, for appellants.

Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Frederick D. Cohen, Atty., Dept. of Justice, Washington, D. C., were on the brief, for federal appellees.

Robert W. Steele, Washington, D. C., with whom Alan M. Grimaldi, Washington, D. C., was on the brief, for appellee General Electric Co.

Harry L. Shniderman and Eugene C. Holloway, III, Washington, D. C., were on the brief for appellees GTE Sylvania Inc. and Aeronutronic Ford Corp.

Stephen B. Clarkson, Washington, D. C., was on the brief for appellees The Magnavox Co. and Zenith Radio Corp. Thomas J. Touhey, Washington, D. C., also entered an appearance for appellees The Magnavox Co. and Zenith Radio Corp.

Fred W. Geldon, Washington, D. C., was on the brief for appellee Matsushita Electric Corp. of America.

J. Wallace Adair and James E. Burk, Washington, D. C., were on the brief for appellee Admiral Corp.

James M. Johnstone, Washington, D. C., was on the brief for appellee Motorola, Inc.

Howard J. Kaufman, Washington, D. C., was on the brief for appellee RCA Corp. Kimber E. Vought, Washington, D. C., also entered an appearance for appellee RCA Corp.

William L. Dickey, Washington, D. C., was on the brief for appellee Sharp Electronics Corp.

Lawrence R. Walders and David A. Fleischer, Washington, D. C., were on the brief for appellee Toshiba-America, Inc. William C. Triplett, II, Washington, D. C., also entered an appearance for appellee Toshiba-America, Inc.

William F. Patten and D. Clifford Crook, III, Washington, D. C., and Burton Y. Weitzenfeld, Chicago, Ill., were on the brief for appellee Warwick Electronics, Inc.

Before BAZELON, Chief Judge, and WRIGHT and ROBINSON, Circuit Judges.

Opinion for the court filed by J. SKELLY WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

We consider here an appeal from a dismissal of an action brought by the appellants under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970 & Supp. V 1975). They seek to obtain, from the Consumer Product Safety Commission, reports which various television manufacturers have submitted on television-related accidents.

For the reasons stated below, we reverse the District Court's dismissal of the plaintiffs' action and remand the case for further proceedings.

## I. THE PARTIES

Appellant Consumers Union is a nonprofit consumer organization. It provides infor-

mation—through its monthly magazine *Consumer Reports* and through other means—on the merits, defects, dangers, and comparative efficacy of consumer goods, including television sets. Appellant Public Citizen, also a nonprofit organization, funds the Health Research Group which conducts research and publishes information for consumers relating to potential hazards to health and safety from consumer products.

Appellee Consumer Product Safety Commission is an independent regulatory agency established by Congress in 1972 pursuant to its enactment of the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* (Supp. V 1975). The Commission's purpose is to help implement the Act's policy of establishing "comprehensive and effective regulation over the safety of unreasonably hazardous consumer products."[1] Several of the officers of the Commission and 12 companies that manufacture television sets and do business in the District of Columbia were, together with the Commission, also named as defendants below and are also appellees before this court.

## II. BACKGROUND

The background of the present impasse is extensive and, in some respects, complex. In March 1974 the Commission issued a public notice[2] announcing that it would hold a public hearing to investigate hazards encountered during operation of television receivers and to consider the necessity of developing safety standards for such receivers. In the notice the Commission requested certain technical information and data on television-related accidents from manufacturers of television sets and component parts. In particular the Commission requested that the manufacturers submit all accident reports collected since the National Commission on Product Safety held hearings on the subject in 1969.[3] Although a few manufacturers complied with the Commission's request, the principal response consisted of a six-page summary of accident data supplied by the Electronics Industry Association (EIA).

After reviewing the data voluntarily submitted, the Commission concluded that the "information submitted to the Commission by the EIA on behalf of the [companies did] not satisfy the Commission's request."[4] Accordingly, on May 13, 1974 the Commission, acting pursuant to 15 U.S.C. § 2076(b)(1) (Supp. V 1975), sent special orders to 25 manufacturers seeking specified information.[5] In the cover letter accompanying the special orders the Commission noted the possibility of a request for public access to this information via the FOIA, and the manufacturers were instructed to identify data claimed to be exempt from public disclosure and to substantiate any such claims. Claims of confidentiality accompanied the responses of most manufacturers. Again the Commission reviewed the submitted data and again the Commission found that certain of the manufacturers had not complied with the request. Thus on July 26, 1974 subpoenas *duces tecum* were issued to the appellee manufacturers and three other manufacturers[6] requiring production of specified tech-

---

1. H.R.Rep.No.1153, 92d Cong., 2d Sess. 26 (1972). The purposes of the Act are:

    (1) to protect the public against unreasonable risks of injury associated with consumer products;

    (2) to assist consumers in evaluating the comparative safety of consumer products;

    (3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and

    (4) to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

    15 U.S.C. § 2051(b) (Supp. V 1975).

2. 39 Fed.Reg. 10929 (March 22, 1974).

3. *Id.*

4. *E. g.,* Special Order of the Commission to General Electric Company, Docket Item 11A, Ex. A–1, in Civil Action (CA) No. 75–136 (D.Del.).

5. Of the appellee manufacturers here, apparently only RCA did not receive a special order. *GTE Sylvania Inc. v. Consumer Product Safety Com'n,* 404 F.Supp. 352, 358 n.11 (D.Del.1975).

6. Sony Corporation, Sanyo Electric, Inc., and Wells-Gardner Electronics Corporation were subpoenaed but did not seek to bar public disclosure of data they forwarded to the Commis-

nical information and all television-related accident data.

Appellants' first request for access, under the FOIA, to data submitted by the manufacturers was in June 1974 and pertained to the documents submitted in response to the Commission's special orders of the previous month.[7]  Although appellants were given access to those reports for which confidentiality was not claimed by the manufacturers, they were not allowed access to documents which the manufacturers claimed were exempt from the FOIA.[8]  Instead, in August 1974 the Commission informed the manufacturers of appellants' FOIA request and again directed the manufacturers to substantiate their claims of confidentiality. The Commission also extended appellants' FOIA request to the additional data which the Commission later subpoenaed from the manufacturers.[9]

Appellants subsequently limited their request to exclude documents protected by the attorney-client privilege or the work product doctrine and those portions of documents that contained names and addresses of accident victims.  Even with this limitation, however, appellants' request went unfulfilled.[10]  In October 1974, therefore, four months after their initial request, appellants informed the Commission that they would consider any further delay to be a denial.  As a result of that communication, representatives of appellants and the Commission met in November 1974 and agreed upon a timetable for completion of the Commission's review of the manufacturers'

submissions.  It was estimated that the Commission's legal determination as to availability of the requested documents would be completed by mid-March of 1975. Appellants acquiesced in that timetable, but expressly reserved the right to consider additional delay as a denial of their request.[11]

On March 28, 1975—nine months after appellants' initial request—the Commission issued its legal determination that the documents requested by appellants did not fall within the exemptions of the FOIA.  It also stated that, even if the data were exempt from mandatory disclosure, disclosure by the Commission was nonetheless within its discretion and, in this case, appropriate in the interest of public health and safety.[12] The Commission subsequently notified the television manufacturers of its decision to release the requested documents on May 1, 1975.  After receiving that notice, seven of the manufacturers filed separate actions against the Commission in the United States District Court for the District of Delaware each seeking an injunction prohibiting disclosure on the ground that release of the documents is barred by the exemptions to the FOIA and certain portions of the Consumer Product Safety Act, 15 U.S.C. § 2051 et seq. (Supp. V 1975).[13] Five other television manufacturers filed similar separate actions in the United States District Court for the Southern District of New York,[14] the United States District Court for the Northern District of New York,[15] and the United States District Court for the Western District of Pennsyl-

---

sion.  Evidently the Commission did not order all manufacturers of television sets sold in this country to submit accident reports.  *GTE Sylvania Inc. v. Consumer Product Safety Com'n, supra* note 5, 404 F.Supp. at 359 n.18.

7.  *Consumers Union of United States v. Consumer Product Safety Com'n,* 400 F.Supp. 848, 850 (D.D.C.1975).

8.  *Id.*

9.  *Id.*

10.  *Id.*

11.  *Id.*

12.  *Id.*

13.  The following manufacturers filed actions in the District of Delaware: GTE Sylvania (CA No. 75–104), RCA (CA No. 75–108), Magnavox (CA No. 75–112), Zenith (CA No. 75–113), Motorola (CA No. 75–114), Warwick (CA No. 75–115), and Aeronutronic Ford (CA No. 75–116).

14.  Matsushita (CA No. 75–2040), Sharp (CA No. 75–2049), and Toshiba (CA No. 75–2050) filed actions in the Southern District of New York.

15.  General Electric (75–CV–189) filed suit in the Northern District of New York.

vania.[16] In all of the actions the manufacturers applied for temporary restraining orders prohibiting release of the documents pending determination of their motions for preliminary injunctions. The Commission consented to the temporary restraining orders in at least some of the cases.[17] Subsequently the individual actions filed by the television manufacturers were consolidated in the District of Delaware.[18] Even though Rule 65(b) of the Federal Rules of Civil Procedure has been held to limit the duration of temporary restraining orders to a total of 20 days, absent consent by the party against whom the order was directed, *Sims v. Greene*, 160 F.2d 512, 516 (3d Cir. 1947), the Commission did not object to requests for further extensions of the temporary restraining orders, with the result that oral argument on the manufacturers' preliminary injunction motions was not heard until July 23, and the stays against the Commission's releasing the information continued until those motions were decided. A preliminary injunction, which the Commission did oppose, was entered on October 23, 1975, prohibiting production of the data.[19] For whatever reason, the appellants did not seek to intervene in this action either to contest the manufacturers in Delaware or to have the action transferred to the District of Columbia. And despite full awareness of appellants' requests for access to the documents, neither the manufacturers nor the Commission even attempted to include appellants as parties or to transfer the cases to the District of Columbia where appellants could readily be joined. Furthermore, though the submissions by the Commission in Delaware plainly put that

court on notice of the interest of appellants in release of the documents, the court did not on its own motion inquire about the necessity of joining appellants under Rule 19, Fed.R.Civ.P.

After the District Court for the District of Delaware entered the preliminary injunction, the Commission filed an interlocutory appeal. The Commission subsequently filed a voluntary motion for dismissal of the appeal, however, and on May 10, 1976 the motion was granted.[20] On August 20, 1976 the District Court "closed out" the case with no further action planned.

### III. THE DECISION BELOW

The instant FOIA litigation was filed in the District Court for the District of Columbia on May 5, 1975 and appellants promptly moved for summary judgment. The Commission and the manufacturers, however, moved to dismiss this action on the ground that no case or controversy existed between appellants and the Commission or, in the alternative, to stay the proceedings pending the decision in Delaware.

Four months later and 15 months after appellants initially asked the Commission for access to the documents, the District Court, without oral argument, filed an opinion and entered an order dismissing the action.[21] The District Court concluded that between appellants and the Commission there was no case or controversy since "on the crucial issue in this case"—the claim that the documents are subject to mandatory disclosure under the FOIA—appellants and the Commission "came to the exact same conclusion": that the documents had

---

**16.** Admiral (CA No. 75–531) filed suit in the Western District of Pennsylvania.

**17.** Appellants claimed below that the Commission consented to the orders in all of the cases, while the Commission claimed it consented to some but not all of the orders. For purposes of the motion to dismiss, the District Court below accepted appellants' allegations as true. *Consumers Union of United States v. Consumer Product Safety Com'n, supra* note 7, 400 F. Supp. at 851 n.7. Because our disposition on appeal does not turn on the number of orders that the Commission consented to, we do not

feel it necessary to resolve the issue here or to remand it to the District Court.

**18.** *GTE Sylvania Inc. v. Consumer Product Safety Com'n, supra* note 5.

**19.** *Id.*

**20.** The Commission's motion is on file with the clerk of the Third Circuit, Docket Nos. 76–1095 —76–1107.

**21.** *Consumers Union of United States v. Consumer Product Safety Com'n, supra* note 7.

to be disclosed.[22] The only reason the Commission was not disclosing the documents, according to the court, was that it was prevented from doing so—first by the several temporary restraining orders and then by the preliminary injunction issued by the District Court for the District of Delaware. The court further concluded that, between appellants and the manufacturers, there was a failure to state a claim upon which relief could be granted.[23]

## IV. THE ISSUES ON APPEAL

▮▮▮ We conclude that the District Court erred, and that there is a case or controversy[24] between appellants and the Commission. At its narrowest compass the case or controversy to be resolved concerns the threshold question of the scope and effect of the proceedings in Delaware. The Commission, echoed by the manufacturers, renews on appeal its argument—accepted by the District Court—that, although it would like to provide appellants with the requested documents, the preliminary in-

junction entered by the Delaware District Court unequivocally precludes it from doing so. Appellants disagree and deny that the preliminary injunction entered in Delaware absolves the Commission of what they believe is the Commission's statutory duty to furnish the requested documents.

This substantial and extensively argued disagreement among the parties to this action fully satisfies the Article III case or controversy requirement.[25] The scope and effect of a prior judgment are always legitimate subjects of argument and resolution in a subsequent action,[26] and the judgment entered by the Delaware District Court suggests no reason why it should be considered an exception.

Moreover, the Commission's conduct of the Delaware litigation provides a second, independent reason for rejecting appellees' contention that a case or controversy is lacking. In fact, reviewing both the administrative and litigational prelude to the instant appeal, the Commission's conduct, in

22. *Id.*, 400 F.Supp. at 851. This most definitely is not, however, "a situation in which [the Government] confesses error and represents that the error will be corrected without need for further court action." *Goosby v. Osser*, 409 U.S. 512, 516 n.4, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973), and cases cited therein.

23. *Consumers Union of United States v. Consumer Product Safety Com'n, supra* note 7, 400 F.Supp. at 853.

24. "The term 'controversies,' if distinguishable at all from 'cases,' is so in that it is less comprehensive than the latter, and includes only suits of a civil nature." *In re Pacific Railway Commission*, 32 F. 241, 255 (Circuit Court, N.D. Cal.1887) (Field, Cir. J.), *quoted in Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

25. In his opinion in *Aetna Life Ins. Co. v. Haworth, supra* note 24, Chief Justice Hughes provided a now classic explanation of the requirement:

A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial

controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * *
300 U.S. at 240–241, 57 S.Ct. at 464 (citations omitted).

26. *See* Restatement (Second) of Judgments § 68 (Tent.Draft No. 1, 1973); Advisory Committee Note, 39 F.R.D. 69, 106 (1966), *citing* Restatement of Judgments § 68, comment (h), § 116 (1942); F. James, Civil Procedure § 11.5, at 534–535 (1965); 1B J. Moore, Federal Practice ⌐ 0.441[1] at 3772–3773 (Moore & Currier ed. 1974), *quoting Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352–353, 24 L.Ed. 195 (1877). *See also, e. g., Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973); *Research Corp. v. Edward J. Funk & Sons Co.*, 15 F.R.Serv.2d 580 (N.D.Ind.1971).

We take it to be established beyond cavil that, "[i]nsofar as the * * * judge may have rested his finding of the absence of a case or controversy on the alleged difficulty of formulating a remedy, he also erred." *Goosby v. Osser, supra* note 22, 409 U.S. at 517 n.5, 93 S.Ct. at 858; *citing Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); *Brown v. Board of Education*, 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955).

several instances, is not easily reconcilable with its ostensible acceptance of appellants' argument that the requested documents should be disclosed.[27] On the basis of this record, we cannot believe that the Commission and the appellants lack the degree of adverseness necessary under the Constitution.

■ The existence of a case or controversy having been established, we must next consider its merits. That is, we must consider whether the Commission and the manufacturers or, alternatively, the appellants are correct in their assessment of the legal effect on this action of the Delaware judgment. At first glance appellees' position seems strong. The Delaware District Court preliminarily enjoined the Commission from releasing the contested documents, and that injunction has not been modified in any manner. It would thus appear that appellants' request may indeed be foreclosed.

Yet the correctness of this conclusion, toward which the Commission and the manufacturers urge us so enthusiastically, is not nearly as obvious as they would have us believe. The procedural history of the Delaware proceeding—as adduced by the District Court, as well as in the appellate briefs and at oral argument—is troubling and belies the apparent soundness of appellees' position. There is, first, the obvious and important fact that the Delaware District Court never did resolve the merits of the manufacturers' claim that the contested documents should not be released. Rather, the court limited itself to preliminarily enjoining the Commission from releasing the documents in dispute.[28] The opinion accompanying the injunctive order unmistakably confined itself to the propriety of relief *pendente lite.*[29] An order of that type is only "a conservative measure intended

---

**27.** For example, despite the time limits imposed on agencies which receive FOIA requests, 5 U.S.C. § 552(a)(6) (1970), the Commission took nine months from the date of appellants' initial request for the documents to issue its determination that the documents could legally be released. *See* 561 F.2d at 352 *supra.* Even more "curious" (to borrow the description of the District Court below) is the fact that the Commission, "having just completed a nine-month legal investigation which led to the conclusion that the documents were available under the FOIA, failed to make even a *pro forma* opposition to the motions for restraining order." *Consumers Union of United States v. Consumer Product Safety Com'n, supra* note 7, 400 F.Supp. at 852. Also, as noted above, the Commission did not object to requests for further extensions. *See* 561 F.2d at 353 *supra.*

It is true that the temporary restraining orders were eventually replaced by a preliminary injunction, issuance of which was contested by the Commission. But it is the aftermath of the issuance of this preliminary injunction that constitutes perhaps the most disturbing aspect of the procedural history of this dispute. The Commission initially adopted the quite logical tack of filing an interlocutory appeal from the preliminary injunction. As recounted above, however, soon after filing the appeal *the Commission itself* filed a motion to have the appeal dismissed, and this motion was granted. *See* 561 F.2d at 353 *supra.* Since that time the Commission has evidently made not a single effort to have the District Court take any further action on the case or to have the Third Circuit consider on appeal the District Court's

grant of the preliminary injunction. (We particularly stress the Commission's failure to pursue an appeal and its general inaction since the preliminary injunction was granted because these are uncontested facts that, obviously, were not before the District Court when it entered the order from which this appeal is taken.)

In large part, therefore, the prolonged delay and current legal stalemate in this dispute can be attributed to the Commission's inaction. Of course, absent lack of candor or other trifling with the court by the parties, questionable and even clearly incorrect civil litigation strategy is ordinarily beyond the concern of an appellate court. *See, e. g., Link v. Wabash R. Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). However, the special nature of the manufacturers' suit in Delaware and its possible effect on Consumers Union and other potential FOIA plaintiffs require this court to pay closer than usual heed to the general background of this dispute and to the overall conduct of the parties.

**28.** *GTE Sylvania, Inc. v. Consumer Product Safety Com'n, supra* note 5, 404 F.Supp. at 375.

**29.** The Delaware court found that irreparable harm would attend disclosure of the documents, 404 F.Supp. at 375, and that the manufacturers had presented a *"prima facie* case showing a reasonable probability" that divulgence would be unlawful. *Id.* at 369, *quoting Oburn v. Shapp,* 521 F.2d 142, 148 (3d Cir. 1975).

\* \* \* to save all rights until the merits of the controversy can be definitely ascertained \* \* \*. It is not an adjudication of rights in any proper sense of the term \* \* \* [and] it does not follow that the final adjudication will be in accordance with the interlocutory order." [30]

Standing alone the preliminary injunction, despite its impact on the agency, could not bar the FOIA action instituted by appellants in the District of Columbia. It would, of course, weigh heavily in any decision as to which of the two suits ought, "giving regard to conservation of judicial resources and comprehensive disposition of litigation," [31] to be stayed or enjoined pending the outcome of the other.[32] Here, however, there is no occasion to engage in the balancing that would ordinarily attend such a situation, for nearly a year after entry of the preliminary injunction the Delaware court entered an order "closing out" the case with no further action planned.

While the "close-out" language employed by the Delaware court finds no parallel in either that court's rules or the Federal Rules of Civil Procedure, it does evince an understanding—apparently shared by the parties before it—that the suit had run its course. No one implies that any intervening determination on the merits has converted the interlocutory relief into a permanent injunction; [33] such other possible interpretations of the Delaware court's order as suggest themselves tend toward the conclusion that, although the reverse FOIA action was not dismissed in form, it was dismissed in fact, and by acquiescence of the parties the matter was dropped.

With that, the preliminary injunction is dead.[34] When there is no prospect of an adjudication of the merits, relief that purports to be temporary, pending such an adjudication, is obviously superfluous. Whether this "closing out" acknowledges an informal—or even tacit—"settlement" between the Delaware plaintiffs and the Commission we need not inquire, since if it did such a settlement would be void as against public policy.[35] Thus the preliminary injunction need hardly be considered an insuperable barrier to the suit at bar.

Besides the absence of a disposition on the merits, the Commission's conduct of the

---

**30.** *United States Electric Lighting Co. v. Metropolitan Club*, 6 App.D.C. 536, 544 (1895). *Accord, Public Service Com'n v. Wisconsin Telephone Co.*, 289 U.S. 67, 70, 53 S.Ct. 514, 77 L.Ed. 1036 (1933); *Industrial Bank of Washington v. Tobriner*, 132 U.S.App.D.C. 51, 405 F.2d 1321, 1324 (1968).

**31.** *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). *Cf. Columbia Plaza Corp. v. Security National Bank*, 173 U.S.App.D.C. 403, 525 F.2d 620, 627 (1975). *See also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and cases cited therein; 2 J. Moore, Federal Practice ¶ 3.06[2] at 736–739 (Moore & Lucas ed. 1975).

**32.** *See, e. g., Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co., supra* note 31, 342 U.S. at 183–184, 72 S.Ct. 219; *Columbia Plaza Corp. v. Security National Bank, supra* note 31, 525 F.2d at 627–628.

**33.** Neither does anyone contend that the hearing on preliminary relief was *sub silentio* consolidated with a hearing on the merits. *See* Rule 65(a)(2), Fed. R. Civ. P. In view of the strictures placed upon such a practice, that is not surprising. *See, e. g., Brooks v. Nacrelli,*

415 F.2d 272, 275 (3d Cir. 1969), *on remand,* 331 F.Supp. 1350 (E.D. Pa. 1971), *aff'd,* 473 F.2d 955 (3d Cir. 1973); *Willits v. Richardson,* 497 F.2d 240, 244 (5th Cir. 1974); *Pughsley v. 3750 Lake Shore Drive Cooperative Building,* 463 F.2d 1055, 1057 (7th Cir. 1972); *Dry Creek Lodge, Inc. v. United States,* 515 F.2d 926, 935 (10th Cir. 1975). *But cf. Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333, 337 (3d Cir. 1974); *Eli Lilly & Co. v. Generix Drug Sales, Inc.,* 460 F.2d 1096, 1106 (5th Cir. 1972).

**34.** *See, e. g., Wickes Corp. v. Industrial Financial Corp.,* 493 F.2d 1173, 1176 (5th Cir. 1974); *Rio Hondo Harvesting Corp. v. Johnson,* 293 F.2d 426, 427 (5th Cir. 1961); *Heasley v. United States,* 312 F.2d 641, 648–649 (8th Cir. 1963); *Sweeney v. Hanley,* 126 F. 97, 99 (9th Cir. 1903), *cert. denied,* 193 U.S. 671, 24 S.Ct. 853, 48 L.Ed. 841 (1904). *Cf.* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2948 at 427 (1973); 7 J. Moore, Federal Practice ¶ 65.07 at 65–86 (Moore & Lucas ed. 1975). *See also United States v. Professional Air Traffic Controllers Organization,* 449 F.2d 1299, 1300 (3d Cir. 1971).

**35.** *Cf. Petkas v. Staats,* 163 U.S.App.D.C. 327, 501 F.2d 887 (1974).

Delaware litigation is a second factor that makes us reluctant to accept, without more, the contention that the Delaware proceedings preclude appellants' suit here. As described above,[36] the Commission was, in several respects, less than vigilant in espousing its putative view that the requested documents should be disclosed.

Yet another, related reason for declining to give the Delaware judgment the preemptive effect that appellees argue it deserves is the absence from the Delaware proceedings of any party requesting disclosure. Not only were the appellants in this case not participants in that suit, neither was any other private party besides the manufacturers. Given the Government's peculiar approach to those proceedings, therefore, the pro-disclosure position was all but unrepresented. This important consideration further attenuates any claim that the preliminary injunction is binding on appellants here.

## V. CONCLUSION

Accordingly, we remand this case to the District Court for the District of Columbia.[37] The issue on remand will be, quite simply, whether or not the documents should in fact be disclosed. In resolving this issue the District Court for the District of Columbia offers a peculiarly appropriate forum. The party that possesses the requested information (i. e., the Commission), the parties that requested the information (Consumers Union and Public Citizens), and the parties that supplied the information (the manufacturers) are all joined in the suit and are ready to present their respective views on the merits. We find no constitutional or procedural bar to adjudication.

*Reversed and remanded.*

**36.** *See* 561 F.2d at 354–355 & note 27 *supra.*

**37.** Jurisdiction in the District Court is predicated on 5 U.S.C. § 552(a)(4)(B) (Supp. V 1975), which provides that under the FOIA:

On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records * * * improperly withheld from the complainant. * * *