**GTE SYLVANIA INCORPORATED, Plaintiff,**

v.

**CONSUMER PRODUCT SAFETY COMMISSION et al., and 11 other cases, Defendants.**

Civ. A. Nos. 75–104, 75–108, 75–112 to 75–116, 75–131, 75–136 and 75–150 to 75–152.

United States District Court, D. Delaware.

Sept. 15, 1977.

James M. Tunnell, Jr. and William H. Sudell, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Harry L. Shniderman, James M. McHaney, Jr. and Eugene C. Holloway of Covington & Burling, Washington, D. C., for plaintiffs GTE Sylvania Incorporated and Aeronutronic Ford Corp. (C.A.No.75–104 and C.A.No.75–116).

Richard J. Abrams of Richards, Layton & Finger, Wilmington, Del., and Stephen B. Clarkson of Sullivan, Beauregard & Clarkson, Washington, D. C., for plaintiff The Magnovox Co. (C.A.No.75–112).

Januar D. Bove, Jr. of Connolly, Bove & Lodge, Wilmington, Del., and Stephen B. Clarkson of Sullivan, Beauregard & Clarkson, Washington, D. C., and Charles E. Matthews of Spengler, Carlson, Gubar & Churchill, New York City, for plaintiff Zenith Radio Corp. (C.A.No.75–113).

Charles S. Crompton, Jr. of Potter, Anderson & Corroon, Wilmington, Del., for plaintiffs Motorola, Inc. (C.A.No.75–114), Matsushita Electric Corp. of America, (C.A. No.75–150), Toshiba America, Inc. (C.A.No. 75–152), and Sharp Electronics Corp. (C.A. No.75–151).

Walter T. Kuhlmey of Kirkland & Ellis, Chicago, Ill., for plaintiff Motorola, Inc. (C.A.No.75–114).

Irving Scher of Weil, Gotshal & Manges, New York City, for plaintiff Matsushita Electric Corp. of America (C.A.No.75–150).

David Fleischer of Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for plaintiff Toshiba America, Inc. (C.A.No.75–152).

Peter A. Dankin and Peter J. Gartland of Wender, Murase & White, New York City, for plaintiff Sharp Electronics Corp. (C.A. No.75–151).

Andrew G. T. Moore II of Connolly, Bove & Lodge, Wilmington, Del. and Charles C. Hileman III and Ira P. Tiger of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff RCA Corp. (C.A.No.75–108).

Howard M. Berg of Berg, Komissaroff & Sawyer, Wilmington, Del., and Michael A. Stiegel of Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill, for plaintiff Warwick Electronics, Inc. (C.A.No.75–115).

Henry N. Herndon, Jr. and Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, Del., and H. Woodruff Turner of Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff Admiral Corp. (C.A.No.75–131).

H. James Conaway, Jr. and Frederick W. Iobst of Young, Conaway, Stargatt & Taylor, Wilmington, Del., and Robert W. Steele, William E. Wickens, Harold D. Rhynedance, Jr. and Alan M. Grimaldi of Howrey & Simon, Washington, D. C., for plaintiff General Elec. Co. (C.A.No.75–136).

James W. Garvin, Jr., U. S. Atty. and John H. McDonald, Asst. U. S. Atty., Wilmington, Del., Barbara Allen Babcock, Asst. Atty. Gen., Sandra Wien and Jeffrey Axelrad, Attys., Dept. of Justice, Washington, D. C., and Jeanette Wiltse and Edward J. Cull, Attys., Consumer Product Safety Comn., Washington, D. C., for defendants.

LATCHUM, Chief Judge.

The plaintiffs in these twelve actions [1] are manufacturers of television receivers who seek to permanently enjoin the Consumer Product Safety Commission ("Commission"), its members and officers from releasing to the public certain television-related accident data which the plaintiffs contend is privileged, confidential, misleading and inaccurate. The accident data had been furnished to the Commission after it publicly requested and later issued subpoenas duces tecum pursuant to its authority under 15 U.S.C. § 2076(b)(3). However, this Court on October 23, 1975, after a hotly contested battle exemplified by the extensive briefs filed and oral arguments presented, entered a preliminary injunction enjoining the Commission's public release of the contested data pending a final hearing on the merits of the plaintiffs' contention. *GTE Sylvania, Inc. v. Consumer Product Safety Commission*, 404 F.Supp. 352 (D.Del. 1975). The Commission's notice of appeal filed on December 12, 1975, with the Third Circuit was voluntarily dismissed on May 10, 1976, after the Solicitor General evidently concluded that it was unlikely under the circumstances that the Third Circuit could be persuaded to reverse this Court's decision to preliminarily, enjoin disclosure. During the ensuing two years, the parties informally suspended activity in these actions apparently awaiting the final determination of a related issue in cases then pending in the District Court for the District of Columbia [2] and in the Western District of New York.[3] In July, 1977, the plaintiffs filed motions to make permanent the preliminary injunction.[4] The Commission responded by filing motions to vacate the preliminary injunction [5] and for summary judgment [6] and by moving to transfer these cases to the District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).[7] This opinion addresses only the question of the propriety of a transfer of these actions.

■ The federal transfer statute provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

In order to secure a change of venue the burden is upon the moving party to show that the action might have been brought in the District of Columbia and that the interest of justice and the convenience of the parties and witnesses require the transfer of these actions to the transferee district.[8]

There is no dispute that the plaintiffs had the right to initially bring these actions in

---

1. There were thirteen separate actions, but one suit, *Teledyne Mid-America Corp. v. Consumer Product Safety Commission*, C.A. No. 75–122, was voluntarily dismissed. Docket Item 63 in C.A. No. 75–122.

2. *Consumers Union of the United States v. Consumer Product Safety Commission*, C.A. No. 75–705 (D.D.C.).

3. *Pierce & Stevence Chemical Corp. v. Consumer Product Safety Commission*, C.A. No. 1975–410 (W.D.N.Y.).

4. Docket Item 51 in C.A. No. 75–104.

5. Docket Item 79 in C.A. No. 75–104.

6. Docket Item 80 in C.A. No. 75–104.

7. Docket Item 55 in C.A. No. 75–104.

8. *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (C.A. 3, 1970), *cert. denied*, 410 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

the District of Columbia. The district court there would have personal jurisdiction over the Commission because it resides in the District of Columbia and because the "wrongful" conduct as alleged in the complaint occurred there; for the same reason, venue would be appropriate under 28 U.S.C. § 1391(e)(1) or (2) which allows a civil action against an agency of the United States to be brought in the judicial district in which the agency resides or in which the cause of action arose. Thus the Court has the *power* to transfer.

Turning now to the criteria for transfer, the Commission does not contend that the convenience of the parties and witnesses requires a transfer of these actions to the District of Columbia. With commendable candor it conceded at oral argument that the convenience factor is in equipoise; a trial of these actions in this forum would be just as convenient for the parties and witnesses as trial in the District of Columbia.

Whether the transfer here sought is warranted under § 1404(a) must therefore be judged by the remaining statutory criteria of whether it is in the interest of justice. The Commission points to the fact that the Consumers Union of the United States, Inc. and Public Citizen's Health Research Group ("FOIA requesters") on May 5, 1975, after the original cases had been filed in this district, brought an action [9] ("D.C. case") under the Freedom of Information Act ("FOIA") in the District Court for the District of Columbia against the Commission and twelve of the manufacturers who are plaintiffs in these actions seeking access to the same television accident reports which are the subject matter of this litigation. The D.C. case was dismissed on September 12, 1975. *Consumer Union of the United States, Inc. v. Consumers Product Safety Commission,* 400 F.Supp. 848 (D.D.C.1975). In that case the District Court found that there was no "case or controversy" between the plaintiff and the Commission and that the complaint failed to state a claim against

the television manufacturers upon which relief could be granted. Almost two years later, on July 5, 1977, the D.C. Court of Appeals reversed the District Court finding that there was a "case or controversy" between the FOIA requesters and the Commission because (1) there was disagreement between the parties as to the scope and effect of the Delaware proceedings, and (2) that the Delaware action had been dismissed in fact and had been dropped by the acquiescence of the parties. *Consumer Union et al. v. Consumers Product Safety Commission,* 561 F.2d 349 (D.C. Cir., decided July 5, 1977). Upon rehearing the D.C. Circuit Court, noting its erroneous assumption in its July 5, 1977, opinion that the Delaware cases had in fact been dismissed or dropped, nevertheless adhered to its prior decision that a case or controversy exists between the FOIA requesters and the Commission for the reason the Commission continues to refuse to produce the documents because of the preliminary injunction outstanding in this litigation. *Consumers Union et al. v. Consumer Product Safety Commission,* No. 75–2509, (Slip opinion decided Aug. 25, 1977).

The Commission now argues from the history of the D.C. litigation that the Delaware and District of Columbia actions "have arrived at the same stage and are ready for a full hearing" and that a transfer from Delaware (1) would avoid the possibility of inconsistent results on the merits, (2) would bring all parties including the FOIA requesters, who have interests of disclosure and non-disclosure, together in one forum, and (3) would eliminate difficulties of the Commission in conducting pretrial discovery and duplicate trials in two fora.

■ First, the Court finds that the Commission has failed to meet its burden of showing that the D.C. case, which was later filed, is in about the same stage and posture as this litigation. In the present suits both

---

**9.** The FOIA requesters, although aware of the earlier filed Delaware cases, did not seek to intervene in the instant cases but for "strategic reasons" filed the D.C. suit instead. This Court, although aware of the FOIA requesters, was without power to bring them into the Delaware litigation involuntarily.

parties have moved for summary judgment with accompanying main briefs, discovery has been practically completed, and following the determination of this transfer motion, briefing can be quickly completed and oral argument promptly held. More importantly, a voluminous record relating to the merits of this case is already before the Court having been filed in preparation of the hearings on the motions for a preliminary injunction which has since been supplemented by recent discovery procedures. In contrast, nothing towards the disposition of the merits has been accomplished in the D.C. litigation. The most recent development there is that the Court of Appeals on September 9, 1977, stayed its mandate until October 4, 1977, in order to give the television manufacturers an opportunity to petition for a Writ of Certiorari to the United States Supreme Court. Moreover, this Court has been advised that several of the television manufacturers have filed motions to dismiss on jurisdictional grounds which must be first determined by the D.C. District Court before reaching the merits even if Certiorari is denied.[10] Thus, the present record clearly shows that this first filed litigation is much farther advanced towards final disposition of the merits than is the later filed D.C. litigation. These two factors distinguish this litigation from the situations in *Jacobs v. Tenney,* 316 F.Supp. 151, 167–71 (D.Del.1970) and *Hall v. Kittay,* 396 F.Supp. 261 (D.Del.1975). After comparing the posture of the litigation here with that in the D.C. Court, it is obvious that granting a transfer from Delaware would unduly delay a determination of the merits. After all, if the Commission is successful here on their present summary judgment motion or after trial if one is necessary, there would be no need to pursue the D.C. litigation since the Commission has stated that it is ready to disclose the accident reports.

The fact that the Commission will be required to proceed in two fora which may result in inconsistent orders on the merits is not an uncommon possibility, particularly when an action may not be transferred to another district in which similar litigation is pending because the action could not have been originally brought there. *See Phillips Petroleum Company v. Federal Energy Administration,* 435 F.Supp. 1234 (D.Del.1977). That possibility as well as duplicate trials, however, could be easily avoided now if the interested FOIA requesters, who instituted this D.C. action after the first cases were brought here, would voluntarily intervene in this litigation. What the Commission overlooks by their argument of inconsistent results and duplicate trials is that this possibility existed from the time the later D.C. suit was filed until the D.C. District Court dismissed that suit on September 12, 1975. The time for the Commission to have moved for a transfer of these cases was in the early stages of this litigation in 1975 before all the effort and work had been expended here.

Furthermore, five of the plaintiffs here initially filed their actions in the district courts of New York[11] and Pennsylvania,[12] but all consented, at the urging of counsel for the Commission, to have their actions transferred and heard in this forum. The Commission expressly stipulated that this district was the "appropriate forum" even though a comparable law suit was then pending in the District of Columbia.

For this reason also the Court is not inclined, especially at this late date and after one transfer of five cases, to relieve the Commission of whatever additional burden it must bear as a result of past legal oversights. Furthermore, the Court does not believe that the burden is as onerous as the Commission implies. As previously noted, most of the discovery has been complet-

---

**10.** Warwick Electronics, Inc. has moved in District of Columbia Court to dismiss for lack of jurisdiction because it did no business in the district.

**11.** Matsushita (C.A. No. 75–2040), Sharp (C.A. No. 75–2049) and Toshiba (C.A. No. 75–2050)

filed actions in the Southern District of New York and General Electric (75–CV–189) filed suit in the Northern District of New York.

**12.** Admiral (C.A. No. 75–531) filed suit in the Western District of Pennsylvania.

ed with respect to the primary legal issue raised in these actions; duplicative discovery can be further avoided merely by stipulations that discovery taken in connection with these actions can be used in the District of Columbia and by coordinating any discovery that remains to be taken.[13] Since the legal issues are substantially the same, briefs and/or affidavits are likely to be similar and the only additional costs to the Commission will be filing papers in that district and sending an attorney to argue motions.

Finally, although the Court is not unmindful of the societal interest in preserving limited judicial resources, it is not so clear that judicial economy will necessarily follow from a transfer of these actions. Having carefully considered the factual and legal contentions which were set forth in the briefs and affidavits submitted by the parties and at the hearing on the preliminary injunction, this Court is familiar with the legal issues raised in the pending cross motions for summary judgment which soon will be ripe for final decision. Economy of judicial effort, in terms of the efficient resolution of both the overriding private concerns of the litigants and the interests of the general public, may well be best served by an orderly and expeditious disposition of the actions pending in this district.

While recognizing the possibility of inconsistent orders from different courts is a legitimate consideration under § 1404(a), the present posture of these actions together with the policy favoring the prompt adjudication of disputes—particularly those which bear importantly upon substantial interests of the public—convinces this Court that the administration of justice will be advanced by denying the motion to transfer.[14] As the Court earlier noted, most of

the discovery connected with this litigation has been, or soon will be, completed, the parties have filed appropriate cross-motions for summary judgment with at least some of the requisite supporting briefs and affidavits, and the Court is prepared to deal expeditiously with the issues raised therein. Viewed from this perspective, the interest of justice is better served by a prompt resolution of dispositive legal issues raised in the motions or, if necessary, upon a trial on the merits. In short, the Court concludes that the Commission has failed to demonstrate that the convenience of the parties and witnesses, in the interest of justice, warrants a transfer of these actions to the District of Columbia.

An order will be entered denying the Commission's motion to transfer and fixing a schedule for the completion of briefing on the cross-motions for summary judgment.

---

**13.** This likewise answers the Commission's suggestion that unless a transfer is granted there exists a threat of inconsistent discovery orders issuing from this district and the District of Columbia court. Moreover, it is represented to the Court that little or no discovery has been taken in the District of Columbia litigation. If that representation is accurate, the threat of inconsistent discovery orders is even more illu-

sory since, as already noted, most of the requisite discovery has already been taken in connection with the actions pending here.

**14.** *Cf. Campbell v. Mitsubishi Aircraft International, Inc.,* 416 F.Supp. 1225 (W.D.Pa.1976); *Pesin v. Goldman Sachs & Co.,* 397 F.Supp. 392 (S.D.N.Y.1975); *Nagle v. Pennsylvania R. R. Co.,* 89 F.Supp. 822 (N.D.Ohio 1950).